JAIRO BAUTISTA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bautista v. Commissioner
Docket No. 27850-88
United States Tax Court
T.C. Memo 1991-348; 1991 Tax Ct. Memo LEXIS 394; 62 T.C.M. (CCH) 268; T.C.M. (RIA) 91348; July 29, 1991, Filed *394 Decision will be entered under Rule 155. Nicholas De Pento, for the petitioner. Allan D. Hill, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 186,560 in petitioner's Federal income tax for 1981 and additions to tax under section 6653(a)(1), section 6653(a)(2), and section 6654(a). Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. The issues for decision are (1) whether evidence obtained by local police officers, without Federal participation, in a search and seizure subsequently declared unlawful may be used in this civil tax proceeding; (2) whether petitioner had unreported income for the year in issue; and (3) whether petitioner is liable for the additions to tax. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. In November 1979, Jairo Bautista (petitioner) was deported from the United States to Colombia, South America, because of a 1975 conviction for cocaine possession in Beaufort, South Carolina. During 1981, petitioner *395 reentered the United States and was an illegal alien residing in South Carolina. Petitioner was a nonresident alien residing in South America at the time the petition in this case was filed. In August 1981, an officer of the San Rafael, California, Police Department received an anonymous tip that petitioner was involved in narcotics trafficking and was staying at the San Rafael Holiday Inn. That officer checked petitioner's record and contacted the Immigration and Naturalization Service; he discovered that the United States had deported petitioner for a narcotics conviction. Two San Rafael police officers went to the San Rafael Holiday Inn. They learned that petitioner and a female companion were registered in adjoining rooms. One officer recognized petitioner, who was standing in the doorway of one of the rooms, and arrested him for being in the country illegally. Although he did not have a search warrant for the rooms, one officer took several steps into one of the rooms, handcuffed petitioner, and had him sit on the bed. Through the open doorway connecting the adjoining rooms, the officer saw two suitcases lying on a bed. The officers took petitioner and the two suitcases *396 to the San Rafael Police Station. Upon arrival at the police station, the officers, still acting without a warrant, pried open the larger suitcase and found clothing and numerous bags of United States currency. The officers then pried open the smaller suitcase and found additional bags of currency. The two suitcases contained $ 288,400 in United States currency. At the time of his arrest, petitioner was in possession of a round-trip ticket from San Francisco, California, to Miami, Florida, that petitioner purchased for $ 501; $ 2,300 in United States currency; and a South Carolina driver's license issued on May 5, 1980, that showed his address as 1700 Whipple Road, #1E, Mt. Pleasant, South Carolina 29464. On August 25, 1981, the Internal Revenue Service issued a Notice of Levy to the San Rafael Police Department for $ 188,223, the amount of income tax computed as due from petitioner for the period from January 1, 1981, to August 24, 1981. On August 28, 1981, the Internal Revenue Service issued a Notice of Termination Assessment of Income Tax for the taxable period January 1, 1981, through August 24, 1981, in the amount of $ 188,223. On September 3, 1981, petitioner was indicted *397 for a violation of title 8, United States Code, section 1326 (a felony) because petitioner reentered the United States after having been deported without obtaining the consent of the United States Attorney General to reapply for admission. On November 16, 1981, petitioner pled guilty and was sentenced to 2 years imprisonment and fined $ 1,000. On February 3, 1982, the United States Attorney for the Northern District of California filed a complaint in the United States District Court for the Northern District of California for forfeiture of the $ 290,700 seized by the San Rafael Police Department. On June 22, 1982, petitioner filed a Claim of Owner and an Answer to Complaint for Forfeiture wherein he stated that he was the owner of the seized funds as follows: The said Jairo Bautista does hereby state and aver that the $ 290,700.00 had been unlawfully seized from him and that said money had not been seized pursuant to a search warrant and there was no legal exception to seize said money without a search warrant. Wherefore the owner of said property, Jairo Bautista, prays that said monies be returned to him and that because of its wrongful seizure, he be allowed his cost and *398 such other relief to which he may show himself entitled.
In a forfeiture proceeding, United States of America v. $ 290,700 U.S. Currency and Jairo Bautista, the United States District Court for the Northern District of California granted a summary judgment in favor of the United States. The United States Court of Appeals for the Ninth Circuit, however, reversed the District Court and remanded the case for further proceedings. On remand, the District Court concluded that "the contents of the suitcases are inadmissible because they are the fruit of the illegal search and seizure of the suitcases." Neither court concluded that the San Rafael police officers acted in bad faith in the search and seizure. On December 1, 1982, an oral deposition of petitioner was taken at the Federal Correctional Institution in Bastrop, Texas, where petitioner was serving his sentence for his conviction for violation of the immigration laws. In that deposition, petitioner stated that the money seized by the San Rafael police belonged to a person named Mario Perilla and that petitioner was entrusted with the money to purchase construction equipment. Petitioner also stated that during 1981 he earned *399 approximately $ 60,000 in commissions from sales of emeralds. On April 11, 1986, the District Court dismissed the forfeiture action and directed that the funds, in their entirety, be returned to petitioner. Of the original amount seized, $ 102,500 was returned to petitioner and, after deducting attorney's fees, petitioner removed the money from the United States. On March 13, 1988, another oral deposition of petitioner was taken at the Miami International Airport in Miami, Florida. Petitioner asserted that, at the time of his arrest, he was holding the seized funds for Mario Perilla and Ernesto Cuenca and that they were contemplating starting an import-export company. On March 28, 1988, the Internal Revenue Service issued a Notice of Jeopardy Assessment of Income Tax to petitioner that was personally served on petitioner on March 31, 1988. On March 29, 1988, the Internal Revenue Service issued a Notice of Intention to Levy for $ 195,977 that was personally served on petitioner on March 31, 1988. On March 29, 1988, the Internal Revenue Service issued a statement of tax due for petitioner's 1981 taxable year for $ 195,977 that was personally served on petitioner on March 31, *400 1988. On May 26, 1988, respondent sent petitioner a notice of deficiency. In the explanation of items attached to that notice, respondent determined petitioner's omitted income as follows: Currency Seized 8/24/81
$290,875 Cost of Airline Ticket
501 Estimated Cost of Living
4,250 Adjusted Gross Income
295,626 Personal Exemption
(1,000)
Taxable Income
$294,626 Petitioner did not file a 1980 or 1981 Federal income tax return. Petitioner did not file any declarations of estimated income tax or make any installment payments of estimated tax on any of the required estimated tax due dates. Petitioner did not report having any United States income tax withheld on any wages earned by him in the United States during 1981. OPINION Motion to Suppress
At trial, petitioner moved to suppress the evidence seized by the San Rafael police officers. Petitioner contends that the search and seizure was unlawful and that the San Rafael police officers acted in bad faith. Petitioner argues that the doctrines of res judicata and collateral estoppel apply to establish in this proceeding that the search and seizure was unlawful. Because the question is whether the exclusionary *401 rule applies at all, we need not address the legality of the seizure. We have considered motions to suppress under the exclusionary rule in various contexts. See, e.g., Jones v. Commissioner, 97 T.C. 7 (1991); Houser v. Commissioner, 96 T.C. 184 (1991). In United States v. Janis, 428 U.S. 433, 460, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976), the Supreme Court held that the exclusionary rule was not a bar to the use in a Federal civil tax case of evidence seized by State law enforcement officials in good-faith reliance on a warrant that was subsequently determined to be defective. The Court stated that "the deterrent effect of the exclusion of relevant evidence is highly attenuated when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign." United States v. Janis, 428 U.S. at 458. Petitioner argues that this case is distinguishable from Janis because the San Rafael police officers acted in bad faith. Petitioner relies on Adamson v. Commissioner, 745 F.2d 541 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. *402 In Adamson, the Court of Appeals for the Ninth Circuit stated that the exclusionary rule would apply in a civil tax proceeding if evidence was illegally obtained by State police acting in bad faith. The opinion concluded, however, that the officers in that case did not act in bad faith. The facts concerning the search in Adamson were almost identical to the facts found by the District Court in suppressing the evidence in issue here. In Weiss v. Commissioner, 919 F.2d 115 (9th Cir. 1990), affg. a Memorandum Opinion of this Court, the Court of Appeals for the Ninth Circuit affirmed our refusal to suppress in this Court evidence derived from misconduct by Internal Revenue Service agents, even though a district court had held that their conduct violated a statute and constituted institutional bad faith. The court of appeals concluded: The IRS has already been penalized for its wrongdoing through the dismissal of the criminal case. We see no justification for also suppressing evidence in this civil case. We therefore hold that the Tax Court properly refused to apply the exclusionary rule to the facts of this case. [919 F.2d at 118-119.] *403 Recently, in Jones v. Commissioner, 97 T.C. 7 (1991), we declined to extend the exclusionary rule to proceedings in this Court when the alleged violation of constitutional rights (and arguable bad faith) related to conduct of Internal Revenue Service agents. We held: The alleged violations occurred prior to the issuance of the notice of deficiency, and if petitioners' factual allegations are correct, during the criminal investigation. * * * To exclude such documents and evidence [obtained under the guise of a civil examination] from a proceeding in which we are attempting to reach the truth or correctness of the parties' positions would be a substantial cost to the system. INS v. Lopez-Mendoza, 468 U.S. 1032, 82 L. Ed. 2d 778, 104 S. Ct. 3479 (1984). This cost is not warranted here due to factors of remoteness and unsuitability of the sanction as it relates to the violation of the rights and the use of the fruits of such violation. [97 T.C. at (slip op. at 30).]
This case presents an a fortiori situation for refusal to extend the exclusionary rule. In any event, there is no evidence in this case from which we can conclude that the officers acted in bad faith. *404 Petitioner acknowledges that the prior opinions found only that the conduct of the officers was unlawful. Petitioner offered at trial testimony of an expert witness. The witness based his opinion on the facts regarding the search stated in the court of appeals and district court opinions. The testimony was stricken on respondent's motion, because it was too speculative and uncertain to justify a conclusion of bad faith. Petitioner's briefs have not persuaded us otherwise. Unreported Income
Respondent determined that petitioner had unreported income for 1981 in the amount of $ 294,626, representing, in substantial part, the amount of the funds seized by the San Rafael police. Petitioner relies on Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), and Rapp v. Commissioner, 774 F.2d 932 (9th Cir. 1985), for the proposition that respondent has not demonstrated that petitioner had unreported income. The cash seized by the San Rafael police sufficiently connected petitioner to unreported income to satisfy any burden on respondent under Weimerskirch v. Commissioner, supra, *405 and similar cases. See Petzoldt v. Commissioner, 92 T.C. 661, 688-690 (1989); see also Tokarski v. Commissioner, 87 T.C. 74, 75-76 (1986). Petitioner claimed the seized funds and, upon dismissal of the forfeiture proceeding, the funds, less the amount subject to the jeopardy assessment, were returned to him. Petitioner removed those funds from the United States. He presented no testimony at trial or other reliable evidence regarding ownership of the seized funds by another. He has made various inconsistent statements about ownership of the funds from time to time, and we are not persuaded by his present uncorroborated assertions. We sustain respondent's determination of unreported income. Additions to Tax
Section 6653(a)(1), for the year in issue, provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. Petitioner contends that there is no underpayment for *406 purposes of the sections 6653(a) and 6654(a) additions to tax, because respondent previously assessed and collected an amount greater than the tax liability determined in the notice of deficiency. An underpayment, for purposes of section 6653(a), is defined in section 6653(c) by reference to the definition of a deficiency in section 6211. Section 6211 does not provide for any reduction of tax constituting an underpayment for amounts seized by the United States but not assessed as a deficiency. See section 6211(a)(1)(B) and (b)(1). Moreover, section 301.6653-1(c)(1), Proced. & Admin. Regs., provides the relevant definition of an underpayment for purposes of this case as follows: (c) Definition of underpayment -- (1) Income, estate, [and] gift * * * taxes. In the case of income * * * taxes, an underpayment for purposes of section 6653 and this section is -- * * * (ii) The amount of the tax imposed by subtitle A or B, * * * as the case may be, if a return was not filed on or before the last date (determined with regard to any extension of time) prescribed for filing such return.
Petitioner did not file a tax return for 1981 and did not maintain books and records. *407 Petitioner presented no evidence with respect to the additions to tax for negligence, and those additions to tax are sustained. Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 6654(b) defines the amount of an underpayment, for purposes of the section 6654(a) addition to tax, as follows: (b) Amount of Underpayment. -- For purposes of subsection (a) [the addition to the tax], the amount of the underpayment shall be the excess of -- (1) The amount of the installment which would be required to be paid if the estimated tax were equal to 80 percent (66-2/3 percent in the case of individuals referred to in section 6073(b), relating to income from farming or fishing) of the tax shown on the return for the taxable year or, if no return was filed, 80 percent (66-2/3 percent in the case of individuals referred to in section 6073(b), relating to income from farming or fishing) of the tax for such year, over (2) The amount, if any, of the installment paid on or before the last date prescribed for such payment.
Section 6654(b) thus provides that, where no return was filed and no installment payments were made, as in the instant case, the amount of the underpayment *408 subject to the section 6654(a) addition to tax is 80 percent of the tax for the year. Petitioner has not negated the applicability of the section 6654(a) addition to tax or shown that he comes within any exception to the application of that section. To reflect the foregoing, Decision will be entered under Rule 155.